**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Maves,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-00622-PHX-DLR<br><br>**ORDER** |

    Plaintiff Andrew Maves applied for supplemental security income, alleging disability beginning July 31, 2012. (A.R. 19.) The claim was denied initially on August 26, 2014, and upon reconsideration on December 3, 2014. (*Id.*) Plaintiff then requested a hearing. (*Id.*) On June 23, 2016, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 38-57.) At the conclusion of the hearing, the ALJ ordered a psychological consultative examination. (*Id.* at 55.) A second hearing was held on December 6, 2016, at which Plaintiff and a vocational expert (VE) testified. (*Id.* at 58-90.)

    On January 12, 2017, the ALJ issued a written decision finding Plaintiff not disabled within the meaning of the Social Security Act ("Act"), which became the Commissioner's final decision when the Appeals Council denied review. (*Id.* at 1-3.) On February 26, 2018, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 11), the parties fully briefed the issues for review (Docs. 15-16). For reasons stated below, the Court reverses the Commissioner's decision and remands for further

proceedings.

## BACKGROUND

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his application. (A.R. 21.) At step two, the ALJ found that Plaintiff has the following severe impairments: depression and anxiety. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 22.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he has no limitation in his ability to understand, remember, and carry out simple instructions, but a mild limitation in his ability to make judgments on simple work-related decisions. Mild is defined as a slight limitation, but he is still able to function well. [He] is limited to unskilled work that can be learned on the job in 30 days or less . . . [h]e has a moderate limitation in

> his ability to interact appropriately with the public and coworkers. Moderate is defined as more than a slight limitation, but still able to function satisfactorily. Finally, he has a mild limitation in his ability to respond appropriately [to] usual work situations and changes in routine work setting.

(*Id.* at 23-24.) The ALJ also found that Plaintiff has no past relevant work. (*Id.* at 29.) At step five, however, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Accordingly, the ALJ found Plaintiff not disabled. (*Id.* at 30.)

## STANDARD OF REVIEW

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## DISCUSSION

Plaintiff challenges whether the ALJ's RFC determination is supported by substantial evidence. Specifically, Plaintiff contends that the ALJ improperly weighed medical opinions, rejected his symptom testimony, and rejected the lay testimony of Plaintiff's grandfather.

### I. Medical Opinions

Plaintiff argues that the ALJ improperly weighed the opinions of Drs. Warden and Teed. In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2)

examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ generally should give more weight to the opinion of a treating physician than to the opinion of an examining physician, and more weight to the opinion of an examining physician than to the opinion of a non-examining physician. *Orn*, 495 F.3d at 631; *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Likewise, when an examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide only "specific and legitimate reasons" to reject the opinion. *Id.* at 830-31. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation and citation omitted).

**A. Dr. Warden**

Dr. Warden, Plaintiff's treating psychologist, opined on Plaintiff's functional capabilities. (A.R. 484-87, 601-04.) Dr. Warden opined that Plaintiff had moderate-to-extreme functional limitations in his ability to perform simple work and make simple decisions, maintain attention and concentration, and perform activities in a schedule. (*Id.*) Plaintiff has extreme limitations in his ability to interact appropriately with the general public, get along with coworkers without distracting them or exhibiting extreme behaviors, and accept instructions and respond appropriately to criticism from supervisors. (*Id.*) Based on these findings, Dr. Warden opined that Plaintiff's impairments would cause him to be absent from work more than three times a month and prevented him from performing a full-time job on a regular and continuing basis. (*Id.*)

The ALJ gave Dr. Warden's opinions little weight. (*Id.* at 27.) Because Dr. Warden's opinions are contradicted by other acceptable medical sources (*see, e.g.*, *id.* at 95, 99-101, 112-15, 428, 612-13), the ALJ's reasons for discounting Dr. Warden's opinions must be specific and legitimate and supported by substantial evidence in the record.

In explaining why Dr. Warden's opinions were discounted, the ALJ stated that Dr. Warden's opinions were inconsistent with Plaintiff's daily activities and Dr. Warden's own treatment notes. (*Id.* at 27.) These reasons are specific and legitimate. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999); *Molina v. Astrue*, 674 F.3d at 1111-12 (9th Cir. 2012).

In determining whether the ALJ's reasons are supported by substantial evidence, the Court finds it helpful to divide the limitations opined by Dr. Warden into two categories: (1) limitations concerning concentration, focus, and ability to complete simple tasks, and (2) limitations concerning interactions with the public, co-workers, and supervisors.

**1. Concentration, Focus, Ability to Complete Simple Tasks**

With respect to the first category, Dr. Warden opined to marked limitations. (A.R. 485-86.) This is inconsistent with Plaintiff's daily activities, which consists of playing video games, reading books and magazines, surfing the internet, performing household chores, preparing and cooking simple meals, and using public transportation. (*Id.* at 27.) Plaintiff admitted that he could "concentrate on video games and play-rule specific 'first-person' on-line games" such as Skyrim and World of Warcraft, "[p]retty much most of the day." (*Id.* at 27, 70.)

These limitations also are inconsistent with Dr. Warden's own treatment notes. For example, Dr. Warden's treatment notes regularly reflect that Plaintiff possessed organized and logical thought, was goal directed, and had focused attention. (*See, e.g.*, *id.* at 524, 526-27, 597, 599, 653, 655.) As such, the Court finds that the ALJ's reasons for discounting Dr. Warden's opinions concerning concentration, focus, and ability to complete simple tasks are supported by substantial evidence.

## 2. Interactions with Public, Coworkers, and Supervisors

With respect to the second category, Dr. Warden opined to extreme limitations. These limitations are not inconsistent with Plaintiff's daily activities. In fact, the only relevant daily activity discussed by the ALJ was Plaintiff's occasional use of public transportation (*id.* at 27), which, at best, is minimally probative of Plaintiff's ability to interact appropriately with the public. The ALJ cites to no daily activities that are inconsistent with the opined-to limitations in interacting with coworkers or supervisors.

Nor are the limitations opined to by Dr. Warden inconsistent with his own treatment notes. The ALJ's decision to discount the opinion relies heavily on the fact that Dr. Warden's treatment notes discussed, among other things, Plaintiff's good eye contact, organized and logical thought, and focused attention. (*See, e.g.*, *id.* at 526-27.) Although these notes may serve as substantial evidence for discounting opinions regarding focus and concentration, they are not substantial evidence for discounting opinions regarding Plaintiff's limitation in interpersonal interactions as a result of depression and anxiety. *See Pontzious v. Berryhill*, No. 3:16-CV-8274-HRH, 2017 WL 6276371, at *5 (D. Ariz. Dec. 11, 2017). "[O]bservations of cognitive functioning during therapy sessions do not contradict [Plaintiff's] reported symptoms of depression and [] anxiety." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

The ALJ also relied on treatment notes that describe Plaintiff as "doing well." (A.R. 27.) Treatment notes, however, must be viewed in light of the overall diagnostic record. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The fact that a person suffering from depression makes some improvement "does not mean that the person's impairment [ ] no longer seriously affect[s] [his] ability to function in a workplace." *Id.* When read as a whole, the treatment notes reveal that, despite some occasional signs of improvement, Plaintiff continued to experience severe symptoms, including ongoing depression, emotional outbursts, extended periods of agitation, and inability to appropriately respond to authority figures. (*See, e.g.*, A.R. 523, 526, 598, 652, 656, 659.)

Although the reasons given for discounting Dr. Warden's opinions concerning

limitations in interacting with the public, coworkers, and supervisors are specific and legitimate, they are not supported by substantial evidence. Therefore, the Court finds that the ALJ improperly discounted Dr. Warden's opinions on these functional limitations. (*Id.* at 26-27.) This error undermines the ALJ's ultimate disability determination and is therefore not harmless. *See Maydanis v. Colvin*, 119 F. Supp. 3d 969, 977 (D. Ariz. 2015).

**B. Dr. Teed**

Dr. Teed, a consultative psychological examiner, also rendered an opinion on Plaintiff's functional capabilities. (A.R. 612-14.) According to Dr. Teed, Plaintiff has no limitations in understanding, remembering, and carrying out simple instructions, and only a mild limitation in making judgments on simple work-related decisions and in responding appropriately to usual work situations. (*Id.*) She also reported that Plaintiff has moderate limitations in interacting with the public and with coworkers, and marked limitations in interacting with supervisors. (*Id.*)

The ALJ discounted only Dr. Teed's opinions with respect to the marked limitations—interacting appropriately with supervisors. (*Id.* at 28.) The ALJ's only reason for discounting this opinion is that it is "based on the [Plaintiff's] one-time interaction with Dr. Teed." (*Id.*) This reason is not legitimate. "[I]f rejecting an examining physician's opinion simply because the doctor only saw the claimant once was a legitimate reason, then there would be no role for examining physician's opinions in the Social Security disability regime, which is not the case. ALJs often rely on examining physicians' opinions when assessing the functional capacity of claimants." *Pontzious*, 2017 WL 6276371, at *5. This reason is particularly problematic here, where the ALJ has at the same time given great weight to Dr. Teed's other opinions, which are based on the same single examination of Plaintiff. *See Cancanon v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-4319-PHX-GMS, 2019 WL 1099088, at *3 (D. Ariz. Mar. 8, 2019) (rejecting this rationale when "the ALJ has at the same time given great weight to the state agency physicians who similarly examined the claimant on one occasion"). The ALJ thus erred by giving little weight to Dr. Teed's opinion that Plaintiff had marked limitations in his ability to interact with

supervisors, and this error was not harmless. *See Maydanis*, 119 F. Supp. 3d at 977.

**II. Symptom Testimony**

Plaintiff states that his anxiety "makes it hard for [him] to focus," and his depression makes him lethargic and hopeless. (A.R. 250.) Plaintiff also contends that as a result of his conditions he is unable to stay on task, follow written instructions, handle stress or changes in his routine, get along with authority figures, and interact socially with others or new people. (*Id.* at 52, 65, 254-56.)

In evaluating a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis. First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. Second, if the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The Court need not uphold all of the ALJ's reasons for discrediting a claimant, so long as substantial evidence supports the ALJ's decision. *See e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" or his activity level. (A.R. at 25.) Therefore, the ALJ was required to articulate clear and convincing reasons for discounting the testimony.

**A. Objective Medical Evidence**

First, the ALJ found that "the objective medical evidence fails to support [Plaintiff's] allegations." (*Id.*) In support, the ALJ discussed Dr. Warden's treatment notes discussing Plaintiff's logical and goal directed thought process, good insight, judgment, concentration, and memory.[1] (*Id.* at 25-26.) With respect to Plaintiff's allegations that he

---

[1] The ALJ also cited as support Plaintiff's Global Assessment of Functioning (GAF) score and the decision by Plaintiff's treating psychologist to not modify his treatment plan

- 8 -

cannot concentrate and focus, this reason is clear and convincing, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001),[2] and supported by substantial evidence (*see, e.g.*, A.R. 524, 526-27, 597, 599, 653, 655). With respect to Plaintiff's alleged limitations in interacting with the public, coworkers, and supervisors, however, it is not supported by substantial evidence. *See Ghanim*, 763 F.3d at 1164; *Holohan*, 246 F.3d at 1205; (*See, e.g.*, A.R. 523, 526, 598, 652, 656, 659).

**B. Daily Activities**

The ALJ's second reason for discounting Plaintiff's symptom testimony is that his alleged symptoms are inconsistent with his daily activities. (A.R. 26-27.) This is a clear and convincing reason when the activities indicate capacities are transferable to a work setting. *Molina*, 674 F.3d at 1113. This reason is supported by substantial evidence with respect to Plaintiff's allegations regarding limitations in concentration and focus. For example, Plaintiff can play and concentrate on his computer game nearly all day, watch TV, read books and magazines, surf the internet, and perform simple household chores. Substantial evidence does not show, however, that Plaintiff's daily activities undermine the severity of Plaintiff's symptoms relating to interacting with the public, coworkers, and supervisors.

Generally, "an ALJ's error [is] harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* at 1115. In other words, an error is harmless "so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.' *Id.* (citing *Batson*, 359 F.3d at 1197). Here, the ALJ's error with respect to Plaintiff's limitations in interacting with the public, coworkers, and supervisors was not harmless. The VE testified that Plaintiff's claimed

---

despite "increased depression and anxiety." (A.R. 25-26.) The Commissioner appears to abandon these arguments on appeal, as such the Court will not discuss them.

[2] Although inconsistence with the weight of medical evidence can be clear and convincing reason for rejecting symptom testimony, it cannot serve as the sole basis. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). This is of no moment here because the AJJ gave a second, valid reason, supported by substantial evidence.

symptoms and limitations, if true, would preclude the performance of other work. (A.R. 88-89); s*ee Leusch v. Berryhill*, -- F. Supp. 3d --, 2019 WL 176768, at *10 (D. Ariz. 2019).

**III. Lay Witness**

Keith Maves is Plaintiff's grandfather. He has known Plaintiff since he was born and adopted him in 2003. According to Mr. Maves, Plaintiff "fears being criticized or judged," "has become more reclusive and more distrusting of society," and his "lack of social awareness often leads to misunderstanding and his ability to get along with others." (A.R. 259-66.) Mr. Maves also reported that Plaintiff spends most of his time playing computer games.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. "[I]n order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." *Id.* (internal citation and quotation omitted).

The ALJ declined to attribute "significant weight" to Mr. Maves' report because he "is not medically trained to make exacting observations . . . ," thus resulting in questions as to the accuracy of her statements. (A.R. 29.) The ALJ also rejected Mr. Maves' report because it was not consistent with the preponderance of the opinions and observations by the medical doctors. (*Id.*) Lay witness testimony, however, cannot be discredited due to lack of medical or vocational expertise. *See Bruce v. Astru*e, 557 F.3d 1113, 1116 (9th Cir. 2009). Nor is it proper for an ALJ reject a witness's lay testimony for lack of support from the medical record. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Id.* Neither of the ALJ's reasons for discounting Mr. Maves' report is germane and, therefore, the ALJ erred by giving little weigh to his observations.

## SCOPE OF REMEDY

"When the ALJ denies benefits and the court finds error, the court ordinarily must

remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry, known as the credit-as-true rule. An action may be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Garrison*, 759 F.3d at 1020 (internal citations omitted). Courts may, however, "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1020.

Here, the record as a whole leaves serious doubt as to whether Plaintiff is, in fact, disabled within the meaning of the Act. For example, the probative value of Dr. Warden's opinions is questionable because they are premised in part on conditions, Plaintiff's depression and anxiety, which evidently are not being treated with medication. (A.R. 68.) The record reflects that Plaintiff was last prescribed psychiatric medication in 2008, that he ceased medication because he thought he was "more irritable" when medicated, and that Dr. Warden "has left the door open" to resuming medication in the future. (*See, e.g.*, *id.* at 68-69, 85 607.) Dr. Warden's opinion assessing Plaintiff's treatment without medication, does not present a complete picture of Plaintiff's limitations. It is important to know whether, in Dr. Warden's medical opinion, Plaintiff's condition would likely improve or be controlled with medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Moreover, the record contains no other medical opinion consistent with the severity of limitations opined to by Dr. Warden. Rather, all other physicians who examined

Plaintiff or reviewed his records rendered opinions more consistent with the ALJ's conclusion. For example, Dr. Teed opined that Plaintiff has only moderate limitations in his ability to interact with the public and coworkers, and marked limitations in his ability to interact appropriately with supervisors. (A.R. 613.) Dr. Yandell and Dr. Pearce, state agency psychological consultants, each opined that Plaintiff has only moderate limitations interacting with the public, coworkers, and supervisors. (*Id.* at 100-01, 114-15.) On this record, the Court finds that a remand for further proceedings is more appropriate so the ALJ can evaluate the competing medical opinions and other evidence as this evidence relates specifically to Plaintiff's ability to interact with the public, coworkers, and supervisors. Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** this action is **REMANDED** for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment accordingly and terminate this case.

Dated this 25th day of March, 2019.

Douglas L. Rayes
United States District Judge